**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-03036

JOSE MURILLO CAMPOS,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

## COMPLAINT

---

Plaintiff Jose Murillo Campos ("Jose"), by and through his attorneys, Aaron Slade and Danielle C. Jefferis of Novo Legal Group, L.L.C., hereby submits his Complaint against the United States of America, and in support thereof states as follows:

### INTRODUCTION

1. On December 30, 2022, Jose Murillo Campos suffered a painful leg injury because Federal Bureau of Prisons ("BOP") employees failed to fix, warn, or protect against damaged and dangerous floor tiles in the gymnasium at the Federal Correctional Institution, a low security prison, in Florence, Colorado ("FCI Florence").

2. Jose was an otherwise healthy, fit, and active 32-year-old man, and his injury was entirely preventable. BOP employees knew about the old, unsafe, problematic floor tiles of the gymnasium floor before Jose got hurt. On top of that, BOP employees assigned to FCI Florence

knew the dangerous flooring had already caused at least two other prisoners serious injury, one of whom just months prior.

3.      Had BOP employees simply exercised reasonable care in protecting against the dangerous gymnasium flooring, Jose would not have suffered his serious, permanent, injury and disability that he continues to cope with.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 1331.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e).

## ADMINISTRATIVE EXHAUSTION

6.      On January 26, 2023, Jose submitted an administrative claim to the Federal Bureau of Prisons pursuant to the Federal Tort Claims Act. On May 17, 2023, BOP Regional Counsel issued a final written denial of Jose's administrative claim pursuant to 28 C.F.R. § 14.9. Accordingly, Jose has exhausted all available administrative remedies and is filing no later than six months after the date of the denial pursuant to 28 U.S.C. § 2401(b).

## PARTIES

7.      Plaintiff Jose Murillo Campos is a 33-year-old man living in a Residential Reentry Center ("RCC") in Albuquerque, New Mexico. Jose was a prisoner incarcerated at FCI Florence between June 19, 2022 and September 27, 2023, when he was released to an RCC. He is no longer incarcerated in prison.

8.      Defendant United States of America is in possession of, operates, and controls FCI Florence. The United States is the proper defendant under 28 U.S.C. § 1346(b)(1) and is the entity

2

responsible for the torts and other wrongful acts or omissions of its employees while acting within the scope of their office or employment.

## FACTUAL ALLEGATIONS

### The FCI Florence premises and gymnasium

9. Throughout 2022, FCI Florence hosted and offered indoor recreation programs at the gymnasium inside the prison.

10. Being in a prison, this particular gymnasium is not open to the public. Only prisoners who are incarcerated inside the prison and subject to certain conditions may use the gymnasium. Per BOP policy, for example, incarcerated people may be subject to "Loss of Privileges," which includes the loss of recreation time.

11. FCI Florence does not hold open the gymnasium at all times either. BOP employees may lock down the entire recreation area and/or prison under certain conditions, meaning no one is permitted to use the gymnasium.

12. For those times when BOP staff did permit incarcerated people to use the prison's recreational facilities, FCI Florence hosted several different programs in the prison gymnasium, including indoor soccer, basketball, and volleyball, among others.

13. The tile flooring of the prison gymnasium where FCI hosted these recreational programs was old and decrepit.

14. Several tiles were broken and damaged.

15. Many of these damaged tiles protruded upwards, creating anywhere from a quarter inch to a half inch "lip"—a seriously dangerous condition any employee responsible for building maintenance or recreation should have been aware of and taken steps to protect against.

3

16.     Many of the damaged tiles were missing large sections, creating holes, gaps, and

bowl-shaped crevasses that any prisoner could trip over, such as those in the below images.







4

***BOP's non-discretionary duties to maintain safe premises***

17.    BOP employees working at FCI Florence did not have freedom to choose whether to maintain the prison premises in a safe condition.

18.    Federal law mandates that BOP employees must "provide for the safekeeping, care, and subsistence of all persons" in their custody. 28 U.S.C. § 4042(a)(2).

19.    Federal regulations mandate that the BOP, an executive agency, "must manage, operate, and maintain Government-owned and leased buildings in a manner that provides for quality space and services consistent with their operational needs and accomplishes overall Government objectives." 41 C.F.R. § 102-74.10.

20.    Federal regulations also mandate that the BOP "must provide . . . minor repairs, [and] building maintenance . . . at appropriate levels to support Federal agency missions . . . ." 41 C.F.R. § 102-74.35.

21.    Included in those duties, the BOP "must . . . [n]ot expose occupants and visitors to unnecessary risks [and] [p]rovide safeguards that minimize personal harm . . . ." 41 C.F.R. § 102-80.80.

22.    In exercising those duties imposed by federal regulation, the BOP must adhere to the accident prevention standards "[t]o the maximum extent feasible." 41 C.F.R. § 102-74.360.

23.    Finally, the BOP Occupational Safety and Health Policy states that "[f]loors and stairways must be maintained in a clean, dry manner and free of nails, splinters, holes, loose boards, corrosion, snow, or ice. Aisles and passageways, including in housing units, must be kept clear and in good repairs, with no obstruction across or in aisles that could create a hazard." BOP Policy No. 1600.11.

5

24.    BOP employees at FCI Florence are required to implement all of the above statutory, regulatory, and policy-based duties.

***BOP's non-discretionary duties to protect against dangerous premises***

25.    BOP employees working at FCI Florence also did not have freedom to choose whether to protect incarcerated people from dangers they knew or should have known about.

26.    Colorado law imposes mandatory duties on any landowner within the state. § 13-21-115, C.R.S.

27.    Every landowner must exercise reasonable care to protect invitees of known dangers or dangers they should know about. § 13-21-115, C.R.S.

*28.*    That duty is not a choice. BOP employees at FCI Florence are required to implement all of the above statutory-based duties and must exercise reasonable care in their implementation.

***BOP employees' notice and knowledge of the dangerous condition of the gymnasium floor***

29.    Sometime before July 2022, an FCI Florence prisoner named Isaiah Lopez severely injured his Achilles tendon because of protruding tiles on the prison gymnasium floor. Isaiah underwent Achilles tendon repair surgery to treat his injury.

30.    After Isaiah's injury, BOP employees failed to repair, replace, or protect in any way against the gymnasium's known dangerous flooring, and instead continued to host recreational activities there.

31.    BOP employees did not provide any sort of notice concerning the dangerous condition, nor did they mark or cordon off the protruding tiles to warn prisoners not to approach those areas.

6

32.    Pedro Casilla Diaz ("Pedro") was also a prisoner incarcerated at FCI Florence during the same time as Jose and Isaiah.

33.    Pedro suffered a serious injury while playing basketball at the FCI prison gymnasium on July 29, 2022, just months prior to Jose's injury.

34.    While Pedro played recreational basketball at the gymnasium, he caught his foot on a protruding floor tile on the gymnasium floor which caused his left foot to get jammed in the floor tile.

35.    The sudden catching of his foot on the protruding tile twisted his left knee so severely it caused a loud popping sound.

36.    A fellow prisoner alerted the BOP recreation staff of Pedro's injury. A member of the BOP recreation staff, Mr. Valdez, came over to Pedro and saw that he had been injured from the protruding floor tile.

37.    A BOP corrections officer, Officer Ferrero, also came over to assist.

38.    Later that evening, two prisoners, Mr. Herrera and Mr. Cuevas, notified another BOP corrections officer, Lieutenant Hill, that Pedro severely injured himself playing basketball earlier that morning. They reported Pedro couldn't walk and needed medical attention.

39.    BOP medical staff transported Pedro to the medical unit for evaluation.

40.    Soon after, BOP corrections officers transported Pedro to an outside hospital where doctors determined that Pedro needed surgery on his left knee to address his injury.

41.    BOP corrections officers returned Pedro to FCI Florence and placed him in a leg brace and a wheelchair until he eventually had surgery to repair his damaged left knee:



42.    After Pedro's injury, BOP employees again failed to repair, replace, fix, or protect in any way against the gymnasium's known dangerous flooring, and instead continued to host recreational activities there.

43.    BOP employees again did not provide any sort of notice concerning the dangerous floor of the gymnasium, nor did they mark or cordon off the protruding tiles to warn prisoners not to approach those areas.

### Jose's Injury on December 30, 2022

44.    Shortly after Pedro's injury, BOP employees posted the following flyer on the walls of FCI Florence, encouraging prisoners to play indoor soccer at the very same gymnasium where Pedro injured his knee despite knowing its condition was dangerous.

45.    BOP employee C. Alicea signed the flyer, as shown below.



Attention General Population

Indoor soccer will start 9/11/2022.
Evening recreation move. 5:00 pm

Recreation Specialist C. Alicea

46.    Just as the flyer advertised, beginning September 11, 2022, FCI prisoners—including Jose—began playing indoor soccer at the FCI Florence gymnasium.

47.    However, BOP employees locked down FCI Florence for much of November, 2022. As such, the gymnasium was closed during that lock down period.

48.    Jose had the opportunity to play indoor recreational soccer only a few times prior to his injury on December 30, 2022.

49.    Unfortunately for Jose, he had no idea other people had been injured on the dangerous tile flooring of the gymnasium because BOP employees never warned of nor did anything to protect him or any other prisoners against the dangers the floor posed.

50.    Jose assumed that if BOP employees held open the gymnasium and held recreational programs there, it was safe to use. There was no signage or notice to indicate otherwise.

51.    In the evening on December 30, 2022, Jose looked forward to playing indoor soccer at the FCI gymnasium. It was one of the few opportunities he had to leave his cell and exercise freely.

52.    Also with Jose that evening were fellow prisoners Valenzuela Irvin, Valente Alvarez, and Alejandro Alvarez-Barrera.

53.    At approximately 7:20PM, on December 30, 2022, Jose ran up the gymnasium floor playing soccer. In mid stride, Jose stepped on one of the many damaged, protruding floor tiles at the FCI prison gymnasium.

54.    Without any notice, Jose's right shoe caught on the damaged, protruding floor tile.

55.    With his momentum still moving forward, Jose's right foot and ankle twisted awkwardly.

56.    Jose's forward momentum caused his body weight to come crashing down to the floor, while his right foot remained snared by the protruding floor tile.

57.    The sudden, awkward twisting of his right foot coupled with Jose's body crashing down to the floor caused his right Achilles tendon to tear and rupture.

58.    Jose felt and heard a loud pop in his right foot and ankle.

59.    Jose felt intense, shooting pain as a result of his injury. He felt as if the bottom of his right ankle and heel had been crushed by a large boulder.

60.    The sudden explosion of pain through his right ankle and leg left Jose collapsed on the floor, clutching his ankle.

61.    Alejandro, Valenzuela and Valente all saw Jose's foot get caught on the damaged, protruding tile, and ran over to him to assist.

10

62.    Valenzuela and Valente lifted Jose up to his feet, while Alejandro ran over to get help from the FCI recreation staff.

63.    When Alejandro spoke with a member of the FCI recreation staff, they instantly blamed the tiles as the cause of Jose's injury, without Alejandro explaining how Jose's injury had unfolded.

64.    Mr. Alicea, BOP employee, contacted the prison medical department, letting them know that Jose injured himself on the gym flooring. Valente heard Mr. Alicea say over the radio that a prisoner had "again" injured themselves on the gymnasium floor tiles.

65.    Valenzuela and Valente carried Jose to the medical department because when Jose tried to stand on his own, he couldn't put any weight on his right foot without severe pain and instability.

66.    Once in the medical department, a BOP registered nurse Wanda Budgick examined Jose.

67.    BOP RN Budgick gave Jose a pair of crutches but did not give him any pain medication or a walking boot.

68.    Mr. Alicea pushed Jose back to his cell in a wheelchair.

69.    After Jose's injury, BOP employees yet again failed to repair, replace, fix, or protect in any way against the gymnasium's known dangerous flooring, and instead continued to host recreational activities there.

70.    BOP employees yet again failed to provide any sort of notice concerning the dangerous condition of the gymnasium floor, nor did they mark or cordon off the protruding tiles to warn prisoners not to approach those areas.

11

71.    Approximately two weeks after Jose's injury, BOP recreation employees posted flyers advertising a new weekly volleyball program at the gymnasium:



*Jose's Damages, Pain, and Suffering*

72.    On January 6, 2023, BOP medical staff took an x-ray of Jose's right foot, which revealed that he did not have any fractured bones. The BOP radiologist, Dr. Farhad Khorashadi, recommended more detailed imaging of Jose's right foot and ankle via MRI to further evaluate his injury.

73.    Jose's pain, discomfort, swelling, and instability in his right ankle continued. Jose could not walk at all without the assistance of crutches or a wheelchair.

74.    Because he had to use his crutches to walk, Jose had to rely on other prisoners to bring him meals and carry his personal items.

75.    FCI Florence is a large compound, and even simple tasks like walking to the cafeteria or other parts of the complex were exhausting because of Jose's need to use crutches to walk.

76.    On March 3, 2023, BOP employees transported Jose to a medical imaging center outside of the prison. There, the medical staff took CT imaging of Jose's right foot and ankle which revealed possible Achilles tendon tendinosis; however, the radiologist recommended additional MRI imaging.

77.    As the weeks went by, Jose continued to rely on crutches to walk, and FCI never provided him a wheelchair.

78.    Jose's reliance on crutches to walk for such a prolonged period of time caused severe bruising under his arms and excruciating pain when he used the crutches to ambulate.

79.    Despite his repeated requests, BOP medical staff never provided surgery for Jose's injured Achilles tendon, instead offering only minimal, conservative treatment.

80.    Jose's pain, immobility, and ankle instability continued when he saw an outside orthopedic physician on June 27, 2023—Dr. Jacob Patterson. During that visit, Dr. Patterson noted that Jose still used crutches to ambulate.

81.    Dr. Patterson noted that Jose's right Achilles tendon was intact but that he had atrophy of his leg muscles and still had diffuse swelling around his ankle.

82.    Dr. Patterson's impression was that Jose's ankle was inadequately rehabilitated after his Achilles rupture on December 30, 2022.

83.    Eventually, Jose started using a cane to ambulate instead of crutches.

84.    Jose continues to experience difficulty walking.

13

85.    To date, Jose has never been able to jog, run, play soccer, or engage in any other recreational activities since his injury.

86.    Even though he is only 33 years old, Jose suffers from significant mobility problems and disability as a result of his injury.

87.    Jose's injury was entirely preventable had FCI employees simply fixed  or otherwise protected against the gymnasium floor — or just stopped hosting recreational activities there.

**CLAIMS FOR RELIEF**
**COUNT 1 – Federal Torts Claims Act ("FTCA") 28 U.S.C. § 1346(b)**
**Colorado Premises Liability Act ("CPLA"), § 13-21-115, C.R.S.**
*Against Defendant United States*

88.    Plaintiff hereby incorporates all prior paragraphs of this Complaint as if fully set forth herein.

89.    The United States is in possession of, operates, and controls FCI Florence where Jose suffered his injury. The BOP employees and agents working at FCI Florence, including any employee responsible for facilities management and recreation spaces, are federal employees acting within the scope of their office or employment.

90.    The United States possesses the land on which it operates FCI Florence and is legally responsible for the condition of the property and the activities or circumstances existing on it. The United States is a "landowner" for purposes of § 13-21-115, C.R.S.

91.    Jose, while incarcerated at FCI Florence, did not remain on the FCI Florence premises voluntarily to advance his own interests. Rather, he was a prisoner and had no choice but to live and recreate there. Jose was at all times an "invitee" for the purposes of § 13-21-115, C.R.S.

14

92.    The United States, through its employees and agents acting within the scope of their employment and office, failed to exercise reasonable care to protect Jose against injury from the dangerous tile flooring of the prison gymnasium that it actually knew or should have known about.

93.    The United States knew or should have known about the dangerous flooring because at least two other prisoners had suffered serious injuries caused by the decrepit, aging, and dangerous tile flooring, just as Jose did.

94.    The United States' failure to repair, replace, or protect in any way against the dangerous tile floor was willful, because it actually knew about the dangers the aging tile flooring presented, it actually knew the tile flooring caused other prisoners to suffer serious physical injuries when they engaged in sporting activities there, and it continued hosting sporting and other recreational activities there while refusing to repair, replace, warn, or in any way protect against the dangerous tile flooring.

95.    Therefore, the United States, through its employees and agents, committed negligent and wrongful acts and omissions while acting within the scope of their employment. Those negligent and wrongful acts and omissions caused Jose physical injury, including but not limited to a torn and ruptured Achilles tendon, likely permanent disability, pain, suffering, emotional distress, loss of enjoyment of life, and other injuries, damages, and losses.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award all relief as allowed by law and equity, including, but not limited to the following:

15

a. Compensatory damages, including but not limited to those for emotional distress, pain and suffering, loss of enjoyment of life, and likely permanent disability;

b. Actual economic damages and consequential damages arising out of the conduct of Defendant's employees acting within the scope of their employment;

c. Pre-judgment and post-judgment interest at the highest lawful rate;

d. Attorney's fees and costs as allowed by law; and

e. Such further relief as justice requires.

DATED this 16th day of November, 2023.

Respectfully submitted,

*s/ Aaron Slade*
Aaron Slade, Esq.
NOVO LEGAL GROUP, LLC
4280 Morrison Rd.
Denver, CO 80219
T: 303-335-0250
F: 303-296-4586
E: aslade@novo-legal.com

*s/ Danielle Jefferis*
Danielle Jefferis, Esq.
NOVO LEGAL GROUP, LLC
4280 Morrison Rd.
Denver, CO 80219
T: 303-335-0250
F: 303-296-4586
E: danielle@novo-legal.com